## BECHMAN *v.* WOOD.

PATENTS ; INTERFERENCE ; CLAIMS.

1. Where the testimony in an interference case shows that the
   devices of the two parties are different and each is entitled to
   a patent for his own invention, there can properly be no adju-
   dication of priority that would prevent either from being
   protected in the possession of his own device ; and when such
   a showing is so made it enters into the substance of the cause
   and is proper to be considered by this court on appeal from a
   decision of the Commissioner of Patents awarding priority to
   one of the parties.
2. If in his application for a patent, an inventor restricts himself to
   a narrow claim for a specific device, he is entitled by amend-
   ment to broaden such claim into a generic claim, and if he
   does so broaden it, he may entitle himself to a patent for the
   broad claim, unless in the meantime the right of another
   inventor has accrued to some other narrow claim for a similar
   device to effect the same purpose which would be dominated
   by the broader claim of the first applicant.

No. 120.  Patent Appeals.  Submitted March 16, 1899.  Decided April 4, 1899.  Mo-
tion for rehearing April 17, 1899.  Rehearing allowed and
decision thereon December 6, 1899.

HEARING and rehearing on an appeal from a decision of

the Commissioner of Patents in an interference proceeding. *Reversed.*

The facts are sufficiently stated in the opinion.

*Messrs. Alexander & Dowell* for appellant Bechman. *Arthur E. Dowell,* of counsel.

*Messrs. Southgate & Southgate* for appellee Wood.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding, wherein the matter in controversy is an improvement in printing machines. The issue between the parties comes to us stated in the following terms:

"In a printing-press the combination of a pair of parallel beds, a pair of impression-cylinders, means for reciprocating the cylinders over the beds, and mechanism independent of the cylinders for transferring sheets from one impression-cylinder to the other."

It is the last element in the combination—"the mechanism independent of the cylinders for transferring sheets from one impression-cylinder to the other"—that constitutes the invention in the case and the subject matter of controversy, the other elements being old and well known in the art. Nor is it the transferring mechanism itself that is new. Both parties used forms of mechanism already well known. That of the appellee consists of tapes such as were long in previous use for handling cut sheets of paper, while that of the appellant consists of transferring rollers, which had also been in common use previous to the invention. It is the combination of this element with the others that constitutes the invention.

The appellee, Henry A. W. Wood, was the first to come into the Patent Office. He filed his application on October 28, 1893. The application of the appellant, Henry F. Bech- man, was not filed until October 26, 1895, very nearly two

years afterwards. When placed in interference, they filed
their preliminary statements. The statement of Wood
alleged conception of the invention by him in the latter
part of the year 1892, disclosure of it to others in Novem-
ber of 1892, the execution of drawings and other disclosures
at subsequent times, and that no machine or model con-
taining the invention had ever been built. The statement
of Bechman, which is greatly more specific, alleged concep-
tion of the invention on or about September 25, 1892, dis-
closure and sketches of the invention about the same time,
the making of a model about April 5, 1895, and the com-
mencement, about October 1, 1895, of a practical machine,
which was completed and practically operated about March
1, 1896.

Upon the testimony taken in the cause all the tribunals of
the Patent Office concurred in awarding to the appellee,
Wood, a judgment of priority of invention. They found
that he had conceived and disclosed the invention as early
as November 8, 1892, and that the appellant, Bechman,
could not, under any reasonable interpretation of the evi-
dence in the case, be awarded an earlier date of conception
than November 30, 1892. In fact, they all incline to the
opinion that Bechman had no adequate conception of the
invention in controversy prior to the spring or summer of
1895.

From the decision of the Commissioner of Patents, award-
ing the judgment of priority to Wood, the case comes to this
court on appeal by Bechman.

Assuming, with the Commissioner, " that Wood's applica-
tion covers an operative device, that the issue includes his
apparatus, and that there is an interference," we fully concur
with the Commissioner that priority should be awarded to
Wood. The testimony seems to us most satisfactorily and
conclusively to show conception of the invention by him on
or before November 8, 1892, and that the earliest date which
could possibly be allowed to the contestant, Bechman, is

that of November 30, 1892.    Upon the same assumption, if
Bechman conceived the invention at any time in 1892, he
manifestly did not seek in any manner to reduce it to prac-
tice before 1895 ; and he was not in the use of due diligence
when Wood effected his constructive reduction to practice
by the filing of his application in the Patent Office.    Upon
this theory, therefore, Wood is undoubtedly entitled to an
award of priority of invention.

This position, while contested by Bechman in the Patent
Office, we do not understand to be controverted by him in
the appeal to this court.    He makes no question on it before
us.    In his reasons of appeal he does not allege any error
on the part of the Commissioner in his determination of
this question of priority ; and to this extent he is to be pre-
sumed to have acquiesced in the decision against him.    His
contention is, as stated in his petition for appeal, that his
device is not the equivalent of Wood's device, that there is
no interference between the two, and there should have been
no declaration of interference, and that Wood's device is
inoperative.    This contention he strenuously maintained
before the Patent Office, and a large part of his testimony
was directed to the support of the proposition.    With this
view, also, immediately after the declaration of interference
he moved to dissolve it; and when that motion was decided
adversely to him, he renewed it after the testimony had
been taken.    Again the motion was denied ; and a further
effort for a rehearing on the point was equally ineffectual.
An appeal to the Commissioner on this point produced no
different result.

Upon the merits the examiner of interferences awarded
priority of invention to the appellee, Wood; and on appeal
to the board of examiners that body affirmed the decision
of the examiner of interferences.    Two, however, of the
three members of that board concurred in calling the atten-
tion of the Commissioner to the alleged inoperativeness of
the Wood device, or rather of a machine assumed to have

been constructed in accordance with his plans and specifica-
tions—which action was taken by them with the view of
having the Commissioner again pass on the question of the
propriety of the declaration of interference in the light of
the testimony that had been adduced in the case, and which
was not before the office at the time when the first motion
was made for a dissolution of the interference. And the
Commissioner did, when the case was brought before him
on the final appeal from the board of examiners, pass upon
the question of the alleged inoperativeness of the Wood
device, as also upon that of the substantial identity of the
devices of the two parties; and he held that the Wood
device was operative, that the interference had been prop-
erly declared, and that Wood was entitled to judgment of
priority of invention. The opinion of this court is now
invoked on these questions.

1. How far it is proper for us sitting in review of the
decisions of the Commissioner of Patents in interference
cases to go behind the declaration of interference, to examine
into its propriety, or to re-examine the motions interposed
for its dissolution, it is unnecessary for us here to determine,
inasmuch as no point has been made thereon by the parties.
It is assumed that the decision of this court may embrace
all the questions that go to determine the substantial rights
of the parties to the interference proceedings; and that
therein are included all the questions that were before the
Commissioner of Patents upon the final hearing—namely,
the alleged inoperativeness of the Wood device, the identity
of the devices of the appellant and appellee, and the ques-
tion of the actual priority of the parties in point of time.
The last question, however, as we have already stated, has
passed out of the case, and is no longer a subject of contro-
versy.

With respect to the matter of the alleged inoperativeness
of the Wood device, we find no difficuly in concurring with
the Commissioner of Patents and the examiner of interfer-

ences.   The test claimed to have been made by the appel-
lant and his friends of a machine assumed to have been
constructed by them in accordance with the specifications
of the appellee's claim and device, is not satisfactory, and
is not entirely beyond the suspicion of unfairness.   It was
an old machine constructed under another patent, with old
and wornout appliances; and yet, with all its disadvantages
it was successfully operated.   It is conceded that it turned
out satisfactory work; but the claim is substantially that it
was not commercially successful, for the reason that it did
not turn out the work with desirable rapidity.   But plainly
this is no sufficient reason for holding that a device is so
inoperative as to be deficient in patentability.   Most great
inventions are to some extent defective in the first instance.

It is unnecessary to review the testimony in this regard.
That has been sufficiently, and to our minds satisfactorily,
done by the Commissioner of Patents in his opinion, and
more at large by the examiner of interferences, and we
could add nothing substantial to their analysis of it.   No
good reason has been shown to us why that testimony does
not justify the conclusion reached by the Commissioner, nor
do we think that the evidence would have justified a differ-
ent conclusion.

Inasmuch, therefore, as we must regard Wood's device as
operative, and inasmuch as the conception of that device
was anterior to the appellant's conception, Wood is undoubt-
edly entitled to the judgment of priority of invention that
has been awarded to him, if it be conceded that the two
inventions are, in fact and in contemplation of law, one and
the same invention.

2. But it is not conceded by the appellant that the two
inventions are one and the same; and he has strenuously
resisted on that ground the declaration of interference at
all its stages.   The identity of the several devices of the
appellant and appellee is controverted.   Now, there can
not properly be a case of interference where the invention

in controversy is not one and the same; and it would be manifestly improper to award a judgment of priority of invention, where there is no identity of the subject matter of invention. It was competent for the parties, as was done in this case, to show in the development of the testimony that their devices were different, and thereby to preclude any adjudication of priority that would prevent either one from being protected in the possession of his own device. The *prima facie* and *ex parte* adjudication of identity, which was the necessary prerequisite for the declaration of interference, might be shown upon judicial investigation to have been erroneous; and the interests of justice would seem to demand that it should be open to the parties to make such showing. And when such showing is made, not *ex parte* upon a preliminary motion that may not be appealable, or where the right of appeal is limited, but as part of the cause and in the ordinary course of the litigation upon the merits, it enters into the substance of the cause, and is proper to be considered by this court on appeal from the final decision of the Commissioner.

We think that the devices of the parties are different. It is true that they accomplish the same result; both are "independent transferring mechanisms." But two devices are not necessarily the same, because they accomplish the same result. Two different printing machines are not necessarily one and the same invention, because both are effectual to print, and perhaps to print equally well. It is conceded that the two devices in question here are very different, and that each party is entitled to a patent for his own special device. But the contention is that the broad claim of the issue dominates both of the special devices, and that these must be held in subordination to it. The broad claim covers, or is intended to cover, any "independent transferring mechanism" in combination with the other features of the issue.

Now, if this broad claim is at all patentable, which may

be doubted, but which it is not necessary here to decide, it must necessarily belong to the first inventor of the special mechanism, if to anyone. That person in the present case is Wood. It certainly could not be allowed to any subsequent inventor of any other special mechanism. But Wood has not here claimed the broad claim. This broad claim is first set up by the appellant, Bechman, to whom, of course, it can not be patented; for he can not be allowed to dominate an invention made before he entered at all into the field of invention. But neither is it now competent for Wood, who had left that field open for other special inventions than his own, to seek to control all such special inventions by procuring a patent on the broad claim which he had not previously advanced. If this broad claim is now independently patentable, as in the Patent Office it has been held to be, the effect of a patent upon it would be unjustly retroactive; for it would sweep within its control all special inventions in the same field previously made. The appellant's claim to that which he has actually invented should not thus be defeated.

The broad claim of the issue was first stated by the appellant, Bechman, in his specifications filed on October 26, 1895. The appellee, Wood's, original application and specifications, as already stated, were filed nearly two years before that, on October 28, 1893; but in those original specifications he did not make the broad claim of the issue; that broad claim was not advanced by him until April 29, 1896, and July 10, 1896, while his application was yet pending, but after the appellant's application had come into the Office. But it was not then competent for Wood so to alter his specifications as to interfere with other inventions made prior to the alteration. This precise point, as it seems to us, has been determined by the Supreme Court of the United States in the case of *Chicago & Northwestern Railway Co.* v. *Sayles,* 97 U. S. 554, in which that court, by Mr. Justice Bradley, said:

"The law does not permit enlargements of an original specification, which would interfere with other inventors who have entered the field in the meantime, any more than it does in the case of reissues of patents previously granted. Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has in the meantime gone into public use."

The declaration of interference between the parties was based upon the assumption that their respective devices, although different in themselves and operating differently, were the equivalents of each other, and therefore were the same inventions. But if they were the equivalents of each other, it was only in the fact that the two devices accomplished the same result. There is no other ground of identity, or even of resemblance. And we understand that the special mechanism of each party has been held to be patentable to its own inventor, and that the only question opened in the Patent Office is upon the broad claim stated in the issue now before us for determination. For the reasons stated we must hold that this broad claim is not now patentable to either party—not to the appellant, because he was not the first to invent an "independent transferring mechanism" in printing machines in the combination described; not to the appellee, because he did not make the claim before his rival made the discovery of his own patentable invention. In fact, it is not entirely clear that the claims in the appellee's specification, which were declared to be in interference with the claim of the appellant, should be construed as setting forth the broad claim of the issue. But this it is unnecessary to determine.

From all that has been said it is our conclusion that, while both parties to this interference are, or may be, entitled to patents for their respective special devices,

neither one of them is entitled to a patent for the broad claim of the issue. In our opinion there should be no judgment of priority of invention for either party with reference to this broad claim; and the judgment of the Commissioner should accordingly be *modified*, and the proceedings in the Patent Office should be reformed in conformity with this view.

The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents according to law.

On April 17, 1899, a petition for rehearing was filed by *Mr. Southgate,* on behalf of the appellee. On June 9, 1899, the motion for rehearing was allowed, and counsel directed to file briefs on or before October 3, 1899.

*Mr. Louis W. Southgate* for the appellee Wood:

1. The finding that Wood did not make the claim before his rival made the discovery of his own patentable invention involves error of fact. In his original application for patent, Wood claimed the issue of this interference. It was at the request of the Patent Office that Wood so amended his claims as to have them involved in this interference. When Wood originally presented his claims they were rejected, and he was proceeding with his application for patent in the hope that the examiner might reconsider his action if the claims were differently and perhaps slightly more narrowly phrased. When Bechman filed his original claims the examiner rejected them, and Bechman appealed to the examiners in chief, who found that the broad subject matter of the interference issue was patentable. Thereafter the examiner notified Wood that his decision that the broad claims were not patentable was withdrawn, and Wood to restate or redraw his claims. It was in pursuance of this action that Wood restated and broadened his claims. If Wood had made the amendments to his case after seeing Bechman's machine, or with a view of injuring Bechman,

there might be some justice or equity in inquiring into the motives of his amendment, but, in this case, his amendments were made before he ever heard of Bechman's machine, before he knew who his contestant was to be and in the ordinary routine of Patent Office practice.

2. An application for patent is always open to amendment, and to hold that Wood has forfeited his right to claim his invention in the broadest possible terms by failing to present such a claim at an earlier date involves error of law. The right to amend applications for patent is of great value, and is frequently exercised. The right is recognized in the statutes. Secs. 4903 and 4888, R. S. An inventor may furnish a written description of his invention at any time before he receives a patent. If he fails in his first attempt to furnish a proper and accurate description, or to secure proper, adequate and sufficiently broad claims, he may try again, and, if necessary, still again and again.

To what extent, and under what circumstances, amendments may be made to applications for patent is left to the Commissioner of Patents under Sec. 483, R. S., in pursuance of which power rules 68 and 70 of the Rules of Practice of the Patent Office were promulgated, which give the applicant the broadest possible rights to amendment. These rules have the same force and effect as statutory enactments, as they are not inconsistent with the provisions of law. Under them Wood has the right to claim his invention in as broad or as narrow terms as he may be advised. He may make such an amendment at any time while his case is pending before the Office. His right to amend is recognized by the statutes, and is secured to him by the rules.

Not only is the right to amend a legal right which is allowed an applicant by the laws passed by Congress and the rules of the Patent Office, but it is a right which has never been denied, and which has always been affirmed by the courts. The Supreme Court of the United States has specifically passed on this point. *Godfrey* v. *Eames*, 1 Wall.

317. See, also, *Singer* v. *Braunsdorf*, 7 Blatch. 521; *Register Co.* v. *Hudson Co.*, 24 Fed. Rep. 793; *Electric Co.* v. *Electric Co.*, 58 Fed. Rep. 186.

This last case even goes so far as to hold that an inventor may amend his case after another party has taken out a patent, and may alter and change his description to describe the function of his machine in different language. See, also, *Manufacturing Co.* v. *Beach*, 71 Fed. Rep. 420; *Beach* v. *Hobbs*, 92 Fed. Rep. 146.

A careful search has failed to disclose a single case which denies or limits the applicant's right to amend his application for patent while the same is pending before the Office. Cases relating to the reissuing of patents are not in point, because the reissuing of a patent is an entirely different matter from amending an application for patent before it issues.

The case of *Railway Co.* v. *Sayles*, 97 U. S. 554, cited by the court as an authority for its action, relates to a case in which the specification and drawings were altered to cover a different machine from that covered by the original application. The changes which were made involved a wide departure in structure from the invention originally disclosed. The point decided is that changes involving a departure from the device originally disclosed are not permissible, and the language is carefully restricted to cover only such changes. That case does not deny or restrict an applicant's right to amendment, provided his amendments are within the scope of his original specification and drawings. A full reading of the case, instead of limiting Wood's right to amend, will show a full and complete recognition of such right, provided the amendments proposed do not involve a departure from the original disclosure.

An application may be amended in language, but not in mechanical structure. In amending his application for patent, Wood is clearly within the law. The holding that Wood has forfeited any right that he has had or may have

to amend his application for patent, as he chooses, while the same remains pending in the Patent Office is contrary to the statutes, the Patent Office rules and decided cases, and is without precedent.

3. This court is without jurisdiction concerning the question of the admissibility or non-admissibility of amendments to Wood's application for patent. The question is an *ex parte* question between Wood and the Patent Office. It forms no part of the interference controversy. Granting that the decision of this court on an interference appeal may embrace all questions which go to determine the rights of parties to an interference proceeding, this court has no jurisdiction to reverse the action of the Commissioner of Patents on any matter *ex parte* in its nature between the Patent Office and an applicant. The jurisdiction for the granting of patents is vested in the first instance in the Commissioner of Patents. If satisfied as to an applicant's right to receive letters patent, he has the jurisdiction to grant the same; and it is only in event of an unfavorable decision by the Commissioner that an *ex parte* question can be presented to, or ought to be decided by, this court.

The jurisdiction of this court in patent matters rests on statutory enactment, and neither of the statutes under which it takes jurisdiction of patent cases contemplates the reversal by it of the decree of the Commissioner in favor of an applicant's claim. The only way this court obtains jurisdiction of an *ex parte* question is under Sec. 4914, R. S. If a case should come to this court with some claims rejected and some allowed, it can not, in its mandate, consider the claims that already stand allowed. It has no jurisdiction to modify or reverse a favorable finding by the Patent Office.

This case does not come to this court under this statute, but under the provisions of Sec. 9 of the act of February 9, 1893. An interference appeal brings up only those questions which are interference questions, and priority of invention is the only question which can be raised in an

interference appeal. The court in an interference proceeding ought not to go out of the interference record and attempt to regulate or anticipate the action of the Commissioner on any questions whatever, except such as are necessarily involved in the question of priority of invention.

The decision in this case attempts to direct the decision of the Commissioner on a strictly *ex parte* question, and should, therefore, be reversed or modified in this particular.

4. If the decision in this case passes into law, it will abrogate a number of Patent Office rules, which by section 483 of the Revised Statutes are as binding in law as the statutes themselves, unless they are clearly contrary to the enacted statutes.

*Messrs. Alexander & Dowell* for the appellant Bechman.

*Mr. W. A. Megrath,* by leave of the court, filed a brief on behalf of the Patent Office.

*Mr. W. H. Singleton,* also by leave of the court, filed a brief as *amicus curiæ* in support of Wood's motion for rehearing.

Mr. Justice MORRIS delivered the opinion of the Court:

A motion or petition for rehearing was filed in this cause and a rehearing on printed briefs was allowed. Briefs have been filed both on behalf of the parties to the interference and on behalf of the Patent Office, which regarded some of its rules of practice as being seriously affected by our decision in the case, and likewise by other counsel as *amicus curiæ* in view of other suits in which the same questions as in this are supposed to be involved. But we fail to find from a careful examination of the arguments submitted, and a full reconsideration of the whole subject matter, any reason to induce us greatly, if at all, to modify our former opinion. The scope and meaning of that opinion, however, seem to have been somewhat misunderstood; and consequently it is proper that we should consider some of the arguments

15 Ct. App.—33

advanced in opposition to the positions supposed to be taken in it, and restate those positions with greater distinctness, if further statement be needed.

In the first place, it is argued, both on behalf of the appellee and of the Patent Office, that our decision tends to overthrow a long-established practice of the Office, and greatly to restrict the right of amendment. The practice in question is thus stated in the brief of the counsel for the Commissioner:

"It has been the long established practice of the Office, in declaring an interference between two or more applications showing distinct and independent species of the same class of inventions, where only one of the applications contained a generic claim which dominated the specific claims of the other application, to make the generic claim the issue of the interference, and to put the specific claims under the broad issue."

And it is also argued, that our former opinion, in declaring, as it is assumed to have done, that there was no interference in fact between the parties, exceeded the jurisdiction of the court, which is claimed to be restricted in interference cases to the determination of the single question of priority of invention.

We think that in both of these propositions there is great misapprehension of the purport of our opinion and decision.

The right of amendment is allowed to a very great extent in the Patent Office. Amendment of applications is not only permitted, but even encouraged and suggested by the examiners; and this is very properly done, since the proceedings are in great measure *ex parte*, and it is exceedingly desirable that patents should go out only for those things which the applicants therefor have actually discovered or invented, and of the true extent of which they themselves have not always in the first instance an adequate appreciation. We have no desire to interfere in any manner with that liberal and beneficent policy, to question its propriety,

or to restrict its application.   But there is a very great dif-
ference between the allowance of amendment and the effect
of amendment when allowed.   Liberality of amendment
within reasonable limits is now also the rule in courts of
law; but such liberality of amendment is never permitted
to contravene existing or intervening rights, or to override
the settled principles of law.

It is not unusual, for example, when no sufficient cause
of action has been stated in a declaration, and a demurrer
to it has for that reason been sustained, to allow such amend-
ment as would state a good and sufficient cause of action.
Nor is it unusual in suits on account to allow amendment
by the addition of new items to the bill of particulars or
new counts to the declaration.   But it is the well established
rule of law, that, when such amendments are made, de-
fenses—such, for instance, as that of the Statute of Limita-
tions—might be interposed to them with effect, which
might not have been sustained to the original declaration,
if such defenses had accrued in the meantime.   And yet it
can not reasonably be said that the right of amendment is
restricted or unduly impaired because the amendment when
made is open to a new defense which was not available
before.

We do not question the propriety of the practice, preva-
lent in the Patent Office, according to the statement of the
counsel for the Commissioner, of permitting applicants for
patents for narrow claims and specific devices, subsequently
to broaden their applications so as to present broad or gen-
eric claims for their inventions.   Certainly the first inventor
of a specific device to accomplish a certain purpose has the
right to advance a broad claim for his invention that would
cover all similar or equivalent devices; and yet through
misapprehension of the extent of his discovery, he may, in
the first instance at least, have confined himself to the nar-
row or restricted claim of his special device.   Possibly
the man who invented the first printing machine might

have claimed the whole art of printing for his invention, and covered under his claim all subsequently devised printing machines. To the claimant, who is entitled to make the claim, it is proper, through the process of amendment in the Office, so to broaden his claims as to seek protection for his real discovery to its fullest extent.

But another and a very different question is presented when other rights have intervened and accrued. When an applicant for a patent has restricted himself in the first instance to a narrow claim of a specific device to effect a certain result, and subsequently another applicant comes into the Office with another narrow claim for another specific device to effect the same result, and thereafter the first applicant broadens his claim into a generic one so as to cover and dominate all special devices to effect such result, assuming that their specific devices have actually been invented in the order of their application to the Office, all the amendment in the world and the utmost liberality of amendment will not justify the destruction of the right of the second applicant to his own specific device. And, of course, the fact that the second applicant may have been the first to make the broad generic claim, and that the first applicant then broadened his claim into generic proportions, can not affect this conclusion. This is what happened in the present case.

Now, it was right and proper for the second applicant to make the broad claim; it was right and proper for the first applicant thereupon to broaden his own so as to present the same generic claim; and it was eminently right and proper that the parties should then be declared by the Office to be in interference. It would have been right and proper to declare an interference, even though the first should not have broadened his claim at all; for in the present instance, the second applicant, by advancing the broad claim, would have dominated the special claim of the first applicant; and a declaration of interference was therefore unavoidable. So

far from holding that there was no interference in fact between the parties, we can not see how the Office could have failed to declare an interference on the broad claim. It was on the broad claim alone that the interference was declared. The narrow claims are not put into the interference, except in so far as the narrow claim of each party is dominated by the broad claim of the other. In the absence of the broad claim, it may be assumed that there is no interference on the narrow claims; and none has been declared.

We consider, therefore, that on the broad claim of the issue the parties were properly declared in interference. At the time of the declaration, of course, the facts were unknown. It might be that the second applicant might be shown to have been the first and original inventor of any device; that the first applicant, even if he was the first to invent, might have lost his right by *laches*; that the first applicant might have taken the invention from the second; or any of the numerous conditions might be shown which are usual in cases of interference. But a peculiar condition of things was manifested by the testimony and the development of the cause. The first applicant was found to be the true first and original inventor of his own special device, and apparently the first inventor of any device of the kind. The second applicant was likewise found to be the true first and original inventor of the special device stated in his application. But, this being the order of invention, the second applicant could not, under any principle of law or any theory of justice, be allowed the broad claim which would have dominated the invention of his predecessor in the field; and neither could that predecessor be allowed the broad claim, for the reason that he had not advanced it before the arrival of the other party on the field of invention. By making only the narrow claim for a special device in the first instance he left the field open for all who would make other different devices to accomplish the same purpose; and

it would not be right and just that he should, after the invention of such another device by another person, be permitted to go back and broaden his claims so as to sweep this second device within the scope of his own original application, even though the broad claim might properly have been advanced in the beginning, and even though, under other circumstances, he might have effectively broad-. ened his claim in the course of the prosecution of the application and procured or entitled himself to a patent for such broad claim.

The case is somewhat analogous to one of *laches.* One, who has conceived an invention, may delay as long as he pleases to reduce it into practice—even ten, twenty, thirty years; but he does so at the risk that some one else may enter the field of invention and by an earlier reduction to practice nullify the effect of the earlier conception. So, if an inventor comes to the Patent Office with an application, in which he first restricts himself to a narrow claim for a specific device, but which he is entitled, by the process of amendment, to broaden into a generic claim, and if he does in fact so broaden it, he may entitle himself to a patent for the broad claim, unless in the meantime the right of some other person has accrued to some other narrow claim for a similar device to effect the same purpose, which would be dominated by the broader claim of the first applicant.

The question, it seems to us, is not one of the right of amendment, but of the effect of amendment upon intervening right. We do not think that it is just that rights, which have previously accrued, should be overthrown by amendments subsequently made. And this we understand to be the positive decision of the Supreme Court of the United States in the case of *Railroad Co.* v. *Sayles,* 97 U. S. 554. In that case it was said, as we have already cited it, that "the law does not permit such enlargements of an original specification, which would interfere with other inventors who have entered the field in the meantime, any more

than it does in the case of reissues of patents previously granted."

That case is precisely in point. It was, it is true, a suit for infringement; but it deals specifically with this question of the enlargement of an original application by subsequent amendment, and it was upon this point that the law was laid down, as stated. We are bound by that statement of the law, and it is not open to us to disregard it. As said by Mr. Justice Bradley in that case, the principle is precisely the same as in reissue cases, in which it has repeatedly been held that the patentee is not entitled to broaden his claim so as to include in it the inventions of others made subsequently to the grant of his patent. *Newton* v. *Furst & Co.*, 119 U. S. 373; *White* v. *Dunbar*, 119 U. S. 47; *Brown* v. *Davis*, 116 U. S. 237; *Miller* v. *Brass Co.*, 104 U. S. 350. See, also, *Topliff* v. *Topliff*, 145 U. S. 156, and *Powder Co.* v. *Powder Works*, 98 U. S. 126.

What we have decided, therefore, and what we here reiterate, is—not that it was not competent for the appellee, or for either or both parties, to amend their several claims to the most liberal extent—not that there was no interference in fact between the parties upon the broad claim constituting the issue in this case, for there was interference in fact—not that there should have been no declaration of interference in the case, for we do not see how such declaration could have been avoided—not that either or both parties were not entitled to make the broad claim, for both were entitled to make it and to come to an issue upon it— but that, under the special circumstances of the case, as developed by the proof, neither party was entitled to prevail against the other on that broad claim, the first applicant being estopped from setting it up against the second applicant in consequence of the intervening right of the latter to his own special device, and the second applicant being precluded from having the benefit of it by reason of the fact that he was not the first in the field of invention.

But it is objected that in interference cases the power of this court is strictly limited to the determination of the question of priority of invention as between the parties to the interference, and that neither the question of patentability of the invention nor the propriety of the declaration of interference is open for consideration. As a general proposition, this is certainly correct, and we have repeatedly so held. *Hisey* v. *Peters,* 6 App. D. C. 68; *Doyle* v. *McRoberts,* 10 App. D. C. 445; *Foster* v. *Antisdel,* 14 App. D. C. 552. Nor have we, any reason for departure from that proposition here.

The patentability of the invention in controversy has nowhere been questioned; and the propriety of the declaration of interference has distinctly been affirmed. In our former opinion there was reference, perhaps unnecessary, to the fact that there was no interference in fact between the two special devices of the parties; nor, in the absence of the broad claim, is there any interference in fact now claimed to exist between these two special devices. Only the broad claim has been put into the issue. The narrow claims are not to be found in it, except, as we have said, in so far as the broad claim dominates both of them. Whatever may have been said in regard to the want of interference in fact between the parties is to be confined to the matter of these two special devices, with reference to which no interference has been declared. Indeed, we understand that separate patents have been, or will be, granted to the parties for these several special devices.

But our conclusion that neither party here is entitled to a judgment of priority for the broad claim of the issue is not antagonistic to the theory that in interference cases only the question of priority of invention can properly be considered. A judgment of priority of invention is the usual preliminary in interference cases to the issue of a patent to the successful contestant. But when the testimony develops the fact that neither party is the first

inventor of the device in controversy, how can the court, with any propriety, adjudge priority to either?

Let us suppose that A and B are rival inventors; that their applications for the same identical invention are pending in the Patent Office at the same time; that A was the first in the order of time to make application; that it was shown by the testimony that B was in fact an independent inventor of the device, but that A had undoubtedly and beyond all question anticipated him in the possession of the invention; and yet that A, on cross-examination, was compelled to admit that the invention was not his, but that he had appropriated it in its entirety from another person, other than B. Now, B in this case could not have judgment of priority of invention; for it would have been shown conclusively that A, or some one else, had anticipated him in the invention; and, most undoubtedly, A could not have such judgment in his favor, in view of his confession that he had not made the invention at all, but had stolen it. A court certainly should not be expected in such a case as that to commit the manifest absurdity of adjudging priority of invention in favor of a person who confessed himself not to be in any manner entitled to the invention.

That, of course, would be an extreme and exceptional case. But it would not differ in principle from the case now under consideration. Here, if either of the two parties is entitled to the broad claim of the issue, it is the appellee. But if the record shows, as we hold that it does, that he is now estopped from setting it up, which, while it operates against him, does not operate to transfer the right to his opponent, he is now necessarily precluded from having a judgment in his favor for priority of invention. The case, of course, is peculiar; and it is the peculiar attitude of the parties towards each other which leads to the unusual result. But, in our opinion, the same conclusion would necessarily follow in any similar case.

It is argued, further, that the appellee did not for the first

time set up the broad claim after the intervention of the appellant and the application of the latter for a patent therefor; and that we were mistaken in so holding. It is urged that the equivalent of the broad claim appears among the canceled claims of Wood's original application. Now, if this were the fact, it might well be that all the present discussion would have been unnecessary, and Wood would be entitled to a patent for the broad claim. But we do not so understand the case; nor was it so understood in the Patent Office. Apart from the question whether canceled and abandoned claims can be regarded as pending so far as to preclude all subsequent claimants from advancing the same claims, and so far as to give vitality to subsequent claims of the same party, in regard to which we need not here express an opinion, we do not think that claim three of the appellee's original specification, to which we are referred, is the equivalent of the broad claim of the issue. That claim three is as follows:

"The combination in a printing press of two form beds, a traveling impression cylinder coacting with each of said form beds, a double set of tapes passing around said impression cylinders and forming a taped pathway, and means for intermittently drawing said tapes forward relatively to the form beds when the impression cylinders are out of impression, substantially as described."

The broad claim of the issue, which it may be proper here to reproduce, is this:

"In a printing press the combination of a pair of parallel beds, a pair of impression cylinders, means for reciprocating the cylinders respectively over the beds, and mechanism independent of the cylinders for transferring sheets from one impression cylinder to the other."

It has been held by the tribunals of the Patent Office, and we understand it to be conceded, that the patentable feature of the invention is the "mechanism independent of the cylinders for transferring sheets from one impression

cylinder to the other," all the other features being old and well known in the art. This in the issue is a generic claim; but in our opinion the original claim three of the appellee's specification is plainly specific. It is by express terms restricted to a special transferring mechanism consisting of a pathway of tapes.

We adhere to our conclusion that the appellee did not advance the broad claim of the issue until after the appellant had filed his application therefor ; and therefore he is not entitled to any judgment of priority for such broad claim. And we repeat our former opinion that neither party is entitled to a judgment of priority of invention or to a patent for the broad issue.

The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents according to law.